UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                Plaintiff,        **Docket No.:12-cr-884 (DLC)**

     -against-

ALEXANDRE SCHEER,

                                Defendant.
-----------------------------------------------------------------X

# MEMORAMDUM OF LAW IN SUPPORT OF APPLICATION FOR A SEVERANCE PURSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE 8(b)

**FRIEDMAN HARFENIST KRAUT & PERLSTEIN, LLP**
*Attorneys for Defendant Alexandre Scheer*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
(516)355-9600

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................i

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND ................................................................................1

ARGUMENT .........................................................................................................3

      POINT I.    THE CHARGES AGAINST SCHEER ARISING FROM GOTHAM HAVE BEEN IMPROPERLY JOINED WITH THE DEFENDANT DJAFAROV AND THE CLAIMS RELATED TO THE OPERATIONS OF HIS CLINICS .........3

CONCLUSION ......................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*United States v. Carrozza*
  728 F.Supp. 266, 268 (S.D.N.Y. 1990) ............................................................. 6, 7
*United States v. Cervone*
  907 F.2d 332, 340-341 (2d Cir. N.Y. 1990) ........................................................... 3
*United States v. Fazio*
  2012 U.S. Dist. LEXIS 50570, 37 (S.D.N.Y. Apr. 6, 2012) ................................. 5
*United States v. Feyrer*
  333 F.3d 110, 113 (2d Cir. 2003) ........................................................................... 3
United *States v. Giraldo*
  859 F.Supp. 52 (E.D.N.Y. 1994) ........................................................................ 5, 7
*United States v. Koumine*
  921 F.Supp. 1131, 1133 (S.D.N.Y. 1996) ............................................................... 8
*United States v. Lech*
  161 F.R.D. 255 (S.D.N.Y. 1995) ................................................................. *passim*
*United States v. Menashe*
  741 F.Supp. 1135 (S.D.N.Y. 1990) ..................................................................... 5, 7
*United States v. Ohle*
  678 F.Supp.2d 215 (S.D.N.Y. 2010) ..................................................................... 7
*United States v. Rajaratnam*
  753 F.Supp.2d 299, 304 (S.D.N.Y. 2010) ............................................................. 3
*United States v. Rittenger*
  524 F.3d 171, 178 (2d Cir. 2008) ........................................................................... 3

## PRELIMINARY STATEMENT

The instant matter is before the Court on the application of Defendant Alexandre Scheer ("Scheer") seeking a severance of the charges against the defendant Rafael Djafarov ("Djafarov"), pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure. Because nothing in the indictment alleges that Scheer and Djafarov committed the same acts, any factual relationship between them or a conspiracy between Scheer, his professional corporation Gotham Medical ("Gotham") and Djafarov, and his professional corporation, the Djafarov Clinics, the joinder of the charges against Scheer and Djafarov was improper. Accordingly, the charges against Scheer and Djafarov should be severed.

## FACTUAL BACKGROUND

The factual background relevant to the instant application is found in the Indictment. On November 27, 2012, a one count indictment was filed charging Scheer, Djafarov and the other defendants, Ruvin Katz ("Rubin"), Ben-Zion Kliot ("Beni"), Zahi Kliot ("Zack"), alleged to have been the managers of Gotham, Sol Niamark ("Niamark"), an attorney who represented patients of Gotham and the Djafarov Clinics, Karlene Tullonge ("Karen Blair") and Renee Wynne ("Wynne"), hospital workers who allegedly steered patients to Michael Spruill ("Spruill"), Jerry Baptiste ("Jean"), Bertram Baptiste, Stephanie Folge ("Folge"), and Arthur Davis ("Davis"), who were all patients of the Gotham and the Djafarov Clinics,

1

with conspiracy to commit health care fraud and mail fraud. The indictment separately describes Gotham and the Djafarov Clinics and alleges that the clinics treated some of the same patient defendants. According to the Indictment, the patient defendants were sent to Gotham and the Djafarov Clinics by Runners who were paid for obtaining the patients and were coached on how to describe their injuries so as to maximize insurance payments and settlements of bodily injury claims. The Indictment alleges a purely superficial fashion of a common scheme between the clinics, but asserts no facts supporting the scheme. However, the Indictment does not allege a scheme between Gotham and the Djafarov Clinics to obtain the patients and maximize insurance payments.

In paragraph eighteen (18) of the Indictment the Government alleges nine (9) overt acts supporting the conspiracy. Specifically, the allege: 1) that patient defendants met with Runners; 2) Djafarov and Naimark paid Runners; 3) Rubin and Zack paid a Runner; 4) Beni contacted a Runner and discussed getting a lawyer for a patient the Runner had recruited; 5) Spruill sent a text message to a Runner; 6) Scheer billed insurance companies for medically unnecessary treatment; and 7) Naimark, the Djafarov Clinics and Gotham made payments to Karen Blair and Wynne. Not a single overt acts alleges that Scheer or Djafarov had any relationship, contact, transaction or even where aware that they shared patients or relationships with any of the other defendants.

2

## ARGUMENT

## POINT I

### THE CHARGES AGAINST SCHEER ARISING FROM GOTHAM HAVE BEEN IMPROPERLY JOINED WITH THE DEFENDANT DJAFAROV AND THE CLAIMS RELATED TO THE OPERATIONS OF HIS CLINICS

Rule 8(b) of the Federal Rules of Criminal Procedure governs questions of joinder. The rule states that participation of multiple defendants in the "same act or transaction", or the same "series" of such acts, will authorize joint trial on common or individual counts. Unless the standard under Rule 8(b) is met, a motion for severance should be granted even absent a showing of prejudice. *United States v. Feyrer*, 333 F.3d 110, 113 (2d Cir. 2003).

The determination of whether joinder is proper turns on solely on the allegations in the Indictment. *United States v. Rittenger*, 524 F.3d 171, 178 (2d Cir. 2008). The Second Circuit has construed this language to mean that joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants or arise out of a common plan or scheme. *United States v. Cervone*, 907 F.2d 332, 340-341 (2d Cir. N.Y. 1990) (internal quotations omitted). The district court in *United States v. Rajaratnam*, 753 F.Supp.2d 299, 304 (S.D.N.Y. 2010) described the manner in which the test for appropriate joinder under Rule 8 should be applied. Specifically, the Court held:

> The Second Circuit has interpreted this language to mean that joinder is proper where two or more persons criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme. That hardly settles the matter, for courts in this Circuit have interpreted and applied each standard in varying terms and have not formally distinguished between the two standards.
> In obliquely elaborating on the substantial identity of facts or participants, the Second Circuit has inquired whether a reasonable person would easily recognize the common factual elements that permit joinder  two defendants separately, the evidence at one trial would essentially [have] duplicate[d] the evidence at the other. Likewise, joinder is proper where proof of one scheme is indispensible for a full understanding of the other. Conversely, joinder is improper where [c]ommission of one of the offenses neither depended upon nor necessarily led to the commission of the other and proof of the one act neither constituted nor depended upon proof of the other. (internal quotations and citations omitted).

*Id*.

Under Rule 8(b) multiple conspiracies may only be joined in a single indictment so long as they shared a common plan or scheme and a substantial identity of facts or participants. *Rittweger*, 524 F.3d at 178 ("Provided that the defendants are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses,"….members of two or more conspiracies may be joined as defendants even where the members have not been charged as participating in one overarching conspiracy".) In essence, where multiple conspiracies are alleged in an Indictment there should be an overlap of the conspiracies based upon a common scheme and

4

acts as among and between all of the defendants. *United States v. Fazio*, 2012 U.S. Dist. LEXIS 50570, 37 (S.D.N.Y. Apr. 6, 2012) ("Here, it is clear that the SI2 alleges a common scheme and related set of conspiracies and acts as among and between all of the defendants as to the majority of the conduct. This supports a joint trial of all defendants.")

Even where a "common participant" exists in both conspiracies joinder is improper if the conspiracies are not related by a common plan or scheme or transactions. As the district court in *Rajaratnam* noted "the mere existence of similarities between some of the actors or some of the crimes committed will not suffice under Rule 8(b)". *Rajaratnam*, 753 F.Supp.2d at 308-309. (collecting cases). Some form of participation in both schemes by the defendant is required. *United States v. Lech*, 161 F.R.D. 255 (S.D.N.Y. 1995) (Sotomayor, J.); see also *United States v. Menashe*, 741 F.Supp. 1135 (S.D.N.Y. 1990); United *States v. Giraldo*, 859 F.Supp. 52 (E.D.N.Y. 1994).

The Indictment in this matter shows that while pled as a single overriding conspiracy the factual allegations allege two completely separate and distinct conspiracies. There is no reading of the Indictment that would support a conclusion that this was a single conspiracy since there are no allegations that each of the defendants participated in the separate clinics alleged to have been the vehicles for committing insurance fraud. The allegations do not allege a "wheel conspiracy" in

5

which Scheer and Djafarov both participated. *United States v. Carrozza*, 728 F.Supp. 266, 268 (S.D.N.Y. 1990). Rather, the Indictment alleges two completely independent conspiracies -one centered upon Gotham and one centered on the Djafarov Clinics that did not share a common plan or common participants. There is simply a plain reading of the factual allegation in the Indictment alleges that Gotham was managed by Rubin, Beni and Zack, and owned by Scheer, and that Djafarov managed Jamaica Medical and Remsen Medical. There is no allegation, or factual support for a claim, that Gotham and the Djafarov Clinics had any relationship or that Djafarov and Scheer even knew each other. Nor does the Indictment allege any overlap of operations of the Gotham and the Djafarov Clinics, patient referrals or shared billing operations. Likewise, the Indictment does not allege that Scheer and Djafarov committed the same acts or patterns of acts. Nor does the Indictment allege that Scheer and Djafarov knew of other each other or had any form of agreement.

While the Indictment charges crimes related to Gotham, Jamaica and Remsen, which are all to have alleged to be involved in a similar scheme related to billing no-fault insurance companies for medical treatment that was allegedly unnecessary, there is no common factual allegations, common plan or scheme or substantial identity of parties related to Gotham and the Djafarov Clinics. Rather, all the Indictment alleges is two separate schemes operated by different individuals

committing similar crimes. The sole relationship between these conspiracies is that some of the same defendants, who were the procurers of the patients (Runners and hospital workers) provided patients to both Gotham and the Djafarov Clinics. This connection is grossly insufficient to support joinder of the charges against Scheer and Djafarov since the only allegation is that these defendants participated in both conspiracies and does not show there is any commonality between the alleged improper conduct by Scheer and Djafarov. The participation by the Runners and hospital workers in both Gotham and the Djafarov Clinics is insufficient to support joinder of the claims against Gotham and the Djafarov Clinics. Some form of participation in both schemes by the defendant is required. *United States v. Lech*, 161 F.R.D. 255 (S.D.N.Y. 1995) (Sotomayor, J.); see also *United States v. Menashe*, 741 F.Supp. 1135 (S.D.N.Y. 1990); United *States v. Giraldo*, 859 F.Supp. 52 (E.D.N.Y. 1994); *United States v. Carrozza*, 728 F.Supp. 266, 268 (S.D.N.Y. 1990). While not dispositive to the issue of joinder, it is significant that the Indictment does not allege any knowledge by Scheer and Djafarov regarding any activities at their respective clinics. *United States v. Ohle*, 678 F.Supp.2d 215 (S.D.N.Y. 2010) ("While knowledge of multiple conspiracies contained in a single indictment is not necessary for joinder, it is an indicator of whether there was a common purpose."); *Rajaratnam*, 753 F.Supp. 2d at 309. The Indictment in this matter, regardless of how it is styled, is nothing more than the improper joinder of

two distinct conspiracies. Scheer should not be exposed to "the risks inherent in joinder of [multiple] alleged conspiracies simply because he had the misfortune of being charged with another defendant who was subject also to other accusations". *United States v. Koumine*, 921 F.Supp. 1131, 1133 (S.D.N.Y. 1996); *Rajaratnam*, 753 F.Supp.2d at 309.

The district court's holding in *United States v. Lech*, is instructive as to why any claims regarding Gotham should be severed from those asserted against the Djafarov Clinics. In *Lech*, the Indictment alleged three (3) separate criminal projects involving the New York City Board of Education. While co-defendant Russo was named in each of the conspiracies related to the various projects, Lech was named in only one (1) conspiracy related to a single project. Then district judge Sotomayor severed claims against Lech from his co-defendants finding that Lech had no knowledge or participation in the conspiracies related to the other projects and no "link" existed between the projects. *Lech*, 161 F.R.D. at 257-258. Like in *Lech*, the Indictment does not allege that Scheer participated in any fashion in the operations of the Djafarov Clinics, was aware of the alleged criminal conduct associated with the Clinics, including payment of Runners and patients and billing for medically unnecessary treatment. It does not allege that the patients sought treatment from both Gotham and the Djafarov Clinics, that some fee sharing arrangement existed between the Clinics or that Gotham and the Djafarov

Clinics were operated by the same individuals. There is simply no rational argument that Scheer and Djafarov participated in a common plan with a substantial overlap of participants and facts.

The prejudice of the misjoinder of the charges against Scheer with those of Djafarov should be readily apparent to the Court. The jury hearing this case will hear evidence regarding all of the allegations against Djafarov and his provision of alleged medically unnecessary treatment which is completely unrelated to Scheer. This problem is compounded by joinder's creation of the false impression that this was conspiracy to run three (3) "no-fault mills" as opposed to the clear allegations of the Indictment that it was not.

## CONCLUSION

For all of the foregoing, the Court, pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure, should grant Scheer a severance from the charges related to Djafarov.

Dated: Lake Success, New York
      May 16, 2013                     Respectfully submitted,

                                        FRIEDMAN HARFENIST KRAUT & PERLSTEIN, LLP
*Attorneys for Alexandre Scheer*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
(516) 355-9600

By: _____/S/_____
                Steven J. Harfenist

9